## CIRCUIT COURT OF BALTIMORE CITY

Filed October 11, 1888.

IN THE MATTER OF HARRY McRAE, A LUNATIC.

PETITION OF SIDONIA H. McRAE
VS.
GEORGE McRAE, COMMITTEE.

*T. C. Ruddell* for committee.

*Thomas C. Weeks* for petitioner.

DENNIS, J.—

This is a petition filed by Sidonia H. McRae, claiming to be the wife of

Harry McRae, a lunatic, against George P. McRae, the committee of said lunatic, asking to have allowed out of the latter's estate certain commissions, and other expenses incurred by her in resisting the application to have him declared a lunatic, and also an allowance for herself by way of alimony.

These claims are resisted by the committee, upon the ground that the petitioner is not the lawful wife of the said committee; the latter having been at the time of the alleged marriage incapable, by reason of mental infirmity, of entering into such a contract.

If the petitioner is a lawful wife, and her resistance to the lunacy proceedings was made *bona fide*, and in the belief that her husband was of sound mind at the time, and not a proper subject for such proceedings, these expenses incurred by her to a reasonable amount are proper to be allowed out of the estate; she is also entitled to alimony.

The sole question therefore is, was the marriage alleged to have taken place between the petitioner and Harry McRae a valid marriage?

Marriage is a contract founded on the mutual consent of the parties, and hence, mental capacity to give consent is essential to its consummation.

Without such capacity on the part of both parties, an attempted marriage between them is ineffectual, and is void *ab initio*, and its nullity may be shown as a defense to any claim upon the estate of the party incompetent to contract, without any previous decree of a Court annulling it.

The evidence clearly shows that at the date of the ceremony of the marriage, April 8th, McRae was already a hopeless imbecile, incapable of entering into marriage or any other contract.

Early in February he had an attack of paralysis, in consequence of which he was removed to the infirmary, and was ever thereafter completely bedridden. Before this attack, for many months previously, his mental powers, in consequence of vicious habits, had steadily weakened, until he had for some time become incapable of attending to any business whatever; his memory and will power had so completely disappeared that, in the language of his physician, he had become "mere clay in the potter's hands." This paralytic attack rapidly developed into *paresis*, which resulted very shortly in absolute lunacy, as determined by the verdict of two different persons.

Without going more fully into the details of the evidence, it is impossible to follow the history of this case without coming to the conclusion that what little mental capacity he may have had at the time of the paralysis in February, had so completely disappeared from the effect of *paresis* by the 8th of April, that at that date he was wholly imbecile (although perhaps not technically a lunatic), and incompetent to give the consent necessary to a valid marriage.